CAMDEN FIRE INS. ASS'N et al. v. E. N. HASTON, SECRETARY
OF STATE, et al.

(*Nashville.* December Term, 1925.)

1. **LICENSES.** That statute partakes both of character of police regulation and revenue statute does not render it objectionable (Acts 1907, chapter 434).

That Acts 1907, chapter 434, requiring corporations to file certain information with secretary of State and for payment of an annual fee, partakes both of character of police regulation and a revenue statute, does not render it objectionable. (*Post, p.* 684.)

Acts cited and construed: Acts 1907, ch. 434.

Cases cited and approved: State v. Whitworth, 76 Tenn., 594; Sherfy v. Argenbright, 48 Tenn., 128; Jourolmon v. Massengill, 86 Tenn., 81; Case Co. v. Joyce, 89 Tenn., 337; Wilkins v. Chicago, etc., R. Co., 110 Tenn., 442; Judges Cases, 102 Tenn., 509; Steedman v. Dobbins, 93 Tenn., 397; Richardson v. Young, 122 Tenn., 471; Kelly v. State, 123 Tenn., 516; Brown v. Sullivan Co., 126 Tenn., 689; Martin v. Hunter's Lessee, 1 Wheat., 304; Stuart v. Laird, 1 Cranch, 299; Cohens v. Virginia, 6 Wheat., 264; Bank of U. S. v. Halstead, 10 Wheat., 51; Minor v. Hoppersett, 21 Wall., 162.

Cases cited and distinguished: State ex rel. v. Baseball Club, 127 Tenn., 303; Gundling v. Chicago, 177 U. S., 183; Pollock v. Farmers' Loan & T. Co., 157 U. S., 429.

2. **COMMERCE.**

Insurance is not commerce, and is not subject to interstate commerce regulations, and hence Acts 1907, chapter 434, requiring payment of annual fees by corporations is not violative of commerce clause of federal Constitution as affecting insurance companies. (*Post, pp.* 684 685.)

Cases cited and approved: State v. Ins. Co., 92 Tenn., 420; Paul v. Virginia, 75 U. S., 168; Ducat v. Chicago, 77 U. S., 410; Ins. Co. v. Morse, 87 U. S. 456; Mfg. Co. v. Ferguson, 113 U. S., 737; Mining, etc., Co. v. Pennsylvania, 125 U. S., 181; Hooper v. California, 155 U. S., 648.

Camden Fire Ins. Ass'n. v. Haston.

3. **CONSTITUTIONAL LAW.** Act requiring payment of annual fee by both foreign and domestic corporations held not violative of the "equal protection of the law" clause of United States Constitution Acts 1907, chapter 434; Const. U. S. Amend. 14).

Acts 1907, chapter 434, requiring corporations to file certain information with secretary of State and to pay an annual fee, does not violate equal protection clause of Const. U. S. Amend. 14, as it imposes same burden on domestic and foreign corporations; "equal protection of the law" only requiring same means and methods to be employed impartially to all constituents of each class, so that laws shall operate equally, and uniformly on all persons in similar circumstances. (*Post, pp.* 685, 686.)

Cases cited and approved: Magoun v. Ill. Trust & Savings Bank, 170 U. S., 293; Kentucky Railroad Tax Cases, 115 U. S., 321; Barbier v. Connolly, 113 U. S., 27; Home Ins. Co. v. New York, 134 U. S., 594; Standard Oil Co. v. Graves, 249 U. S., 389.

Case cited and distinguished: Texas Co. v. Brown, 258 U. S., 475.

4. **CONSTITUTIONAL LAW.** Eminent domain.

The provisions of Const. U. S. Amend. 5 as to due process of law and taking private property for public use without just compensation, applies alone to Federal government and not to the States. (*Post, pp.* 686-689.)

Cases cited and approved: Frierson v. Church, 54 Tenn., 703; Barron v. Baltimore, 7 Pet., 243; Eilenbecker v. District Court, etc., 134 U. S., 31; McElvaine v. Brush, 142 U. S., 155; Waterhouse v. Public Schools, 55 Tenn., 859; Henley v. State, 98 Tenn., 681; Trentham v. Moore, 111 Tenn., 353.

Case cited and distinguished: Jenkins v. Ewin, 55 477.

5. **TAXATION.**

With exceptions of limitations of Constitution, article 2, section 28, legislature can impose any tax it deems proper, regardless of what it may be denominated. (*Post, p.* 689.)

6. **LICENSES.** Act requiring corporations to pay annual fee, not being property tax, is within power of legislature to enact for purpose of creating revenue (Acts 1907, chapter 434).

Camden Fire Ins. Ass'n. v. Haston.

Acts 1907, chapter 434, requiring corporations to pay annual fee, not being a property tax, since it does not attempt to tax either the capital stock, corporate property, franchise of corporation, or individual stock of shareholders, is within power of legislature to enact for purpose of creating revenue. (*Post, p.* 689.)

Acts cited and construed: Acts 1907, ch. 434.

Case cited and approved: Railroad v. State, 55 Tenn., 796.

7. **CORPORATIONS.** State may grant or refuse permission to foreign corporations to do business within its borders and determine what they shall pay for such "privilege," and it may expel them after they have been admitted.

State can grant or refuse permission to foreign corporations to do business within its borders, to determine what they shall pay for such privilege, and it may expel them after they have been admitted; a "privilege" being whatever legislature chooses to declare as such and a positive prohibition or power to prohibit is not essential to its validity. (*Post, pp.* 689, 690.)

Cases cited and approved: Phillips v. Lewis, 3 Shan. Cas., 243; Burke v. Memphis, 94 Tenn., 694.

8. **STATUTES.**

Special laws as a general rule are never repealed by implication by general legislation, except upon most unequivocal manifestations of an intent to that effect. (*Post, pp.* 690-692.)

9. **INSURANCE.** Act requiring payment of annual fee by corporations held not impliedly repealed by subsequent general revenue bill imposing privilege tax on insurance companies "in lieu of all other privilege taxes" (Acts 1907, chapters 434, 541; Acts 1909, chapter 479; Acts 1913, 1st Ex. Sess., chapter 13, section 2: Acts 1915, chapter 101; Acts 1919, chapter 134; Acts 1923, chapters 21, 75; Acts 1925, chapter 134).

Acts 1907, chapter 434, providing for payment of annual fee by corporations, being a special act creating revenue and regulative in its character, *held* not, in view of Acts 1909, chapter 479, Acts 1913, 1st Ex. Sess., chapter 13, section 2, Acts 1915, chapter 101, Acts 1919, chapter 134, Acts 1923, chapter 21, and Acts 1925, chapter 134, im-

pliedly repealed by General Revenue Bill of 1907, chapter 541, or Acts 1923, chapter 75, or subsequent general revenue statutes, imposing a privilege tax on insurance companies "in lieu of all other privilege taxes;" such quoted term meaning exclusion of imposition of such privilege taxes by counties and cities. (*Post, pp. 690-692.*)

Acts cited and construed: Acts 1907, chs. 434, 541; Acts 1909, ch. 479; Acts 1913, ch. 13, sec. 2; Acts 1915, ch. 101; Acts 1919, ch. 134; Acts 1923, chs. 21, 75; Acts 1925, ch. 134.

Cases cited and approved: Memphis v. Ins. Co., 65 Tenn., 527; Memphis v. Ins. Co., 3 Shan. Cas., 463; Ins. Co. v. Taxing Dist., 72 Tenn., 646; Memphis v. Carrington, 91 Tenn., 511; Goodbar v. Memphis, 113 Tenn., 38; Railroad v. Railway, 116 Tenn., 517; McCampbell v. State, 116 Tenn., 109; Zickler v. Bank, 104 Tenn., 289; Clark v. Killough, 281 S. W., 777.

10. **CONSTITUTIONAL LAW. Statutes. Act requiring payment of annual fee by corporations, graduated according to amount of capital stock, held not unconstitutional as arbitrary class legislation (Acts 1907. chapter 434; Constitution. article 1, section 8, and article 11, section 8).**

Acts 1907, chapter 434, requiring payment of annual fee by corporations, fees being graduated according to amount of capital stock, *held* not arbitrary class legislation in violation of Constitution, article 1, section 8, and article 11, section 8. (*Post, pp. 692-695.*)

Acts cited and construed: Acts 1907, chs. 434, 541; Acts 1923, chs. 21, 75, Acts 1925, ch. 134.

Case cited and approved: Bank of Commerce & Trust Co. v. Senter. 149 Tenn., 569.

Constitution cited and construed: Art. 1, sec. 8; Art. 11, sec. 8.

ON PETITION TO REHEAR.

11. **LICENSES. Act requiring payment of annual fee by corporations, not being a property tax and valid solely as a revenue measure, its validity was not affected by amendment providing for turning of fees into state treasury (Acts 1907, chapter 434; Acts 1913, 1st Ex. Sess., chapter 13).**

Acts 1907, chapter 434, requiring payment of annual fee by corporations, not being a property tax, legislature had power to pass it solely as a revenue measure, and hence its validity was not affected by its amendment by Acts 1913, 1st Ex. Sess., chapter 13, providing that the fees less the cost of collection should be turned into State treasury. (*Post, p.* 695.)

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

O. B. RYON and ROBERTS & ROBERTS, for appellants.

LOUIS LEFTWICH and FRANK M. THOMPSON, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Complainants, foreign fire insurance companies, instituted this suit to recover certain sums paid to the secretary of State, under protest, in compliance with chapter 434, Acts of 1907, which is as follows:

"An act to require corporations to file certain information with the secretary of State, and to provide for the payment of an annual fee therewith to the secretary of State.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that each and every corporation

heretofore or hereafter chartered by the State of Tennessee or organized under the laws, and each and every foreign corporation qualified to do and transact its business in the State of Tennessee in compliance with its laws requiring foreign corporations to file its charter with the secretary of State shall, on or before the first day of July in each and every year, commencing with the year 1907, prepare and file in the office of the secretary of State a written statement signed by its president or vice president and attested by its secretary and sworn to by either its secretary or president, which shall contain the following information—to-wit: The name and style of the corporation and its principal office or place of business in the State of Tennessee, if it be a Tennessee corporation; and if it be a foreign corporation, its principal office and place of business in the State of its creation and also in the State of Tennessee; the amount of its capital stock authorized by its charter and the amount of capital stock issued and outstanding; the names of its principal officers—viz., its president, vice president or vice presidents, secretary, and treasurer, and a complete list of its board of directors; the nature and character of the business in which it is engaged. That every such corporation shall, at the time of filing said statement with the secretary of State, pay to the said secretary of State a sum of money as follows: Every corporation with a capital stock authorized by its charter of less than $100,000 and more than $50,000, $20; every corporation with a capital stock authorized by its charter of less than $50,000 and more than $25,000, $10; every corporation with a capital stock authorized by its charter of less than $25,000, $5; every

Camden Fire Ins. Ass'n. v. Haston.

corporation with a capital stock authorized by its charter of more than $100,000 and not more than $250,000, $30; every corporation with a capital stock authorized by its charter of not less than $250,000 and not more than $500,000, $50; every corporation having a capital stock authorized by its charter of not less than $500,000 or more than $1,000,000, $100; and every corporation having a capital stock authorized by its charter of $1,000,000 and over, $150. That every company or corporation failing or refusing to prepare and file said statement and pay said money as hereinbefore provided shall be subject to a penalty of $500, which may be recovered in a suit brought in the name of the State of Tennessee against said company; and that the secretary of State shall, on or before the first day of September in each and every year, prepare a list of the corporations in default, and shall turn over the same to the attorney-general of the State, who shall cause suits to be instituted for the recovery of said amounts by the district attorney general of the district in which said corporations in default have their principal offices or places of business.

"Sec. 2. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

It will be observed that the act does not provide that the fees exacted are for the purpose of administering the act or defraying any specific costs or expenses connected therewith, thereby constituting it exclusively a regulatory act.

It is alleged in the bill that the act produces $160,000 annually, while the expense of enforcing it does not exceed $5,000 a year.

The bill charged that the act is unconstitutional for various reasons pointed out therein.

The defendants, by demurrer, insisted that the act was valid.

The chancellor sustained the demurrer and dismissed the bill, and the complainants have appealed to this court and assigned errors too numerous to be incorporated in this opinion.

Within a few months after the passage of the act of 1907, various bills were filed questioning the validity of the act upon practically every ground now invoked, and this court dismissed the bills, in oral opinions, thereby sustaining the constitutionality of the act. Since that time, about seventeen years prior to the filing of the present bill, the corporations affected have acquiesced in those decisions, have filed the reports and paid the fees required by the act, and, according to the allegations of the bill, a substantial part of the State's revenue, with which it discharges its annual budget, has been derived from this source.

In *State ex rel.* v. *Baseball Club,* 127 Tenn., 303, 154 S. W., 1154, Ann. Cas., 1914B, 1243, it was said: "Decisions long acquiesced in, which constitute rules of property or trade, or upon which important rights are based, should not be disturbed, even though erroneous as original holdings. *State* v. *Whitworth,* 8 Lea, 594; *Sherfy* v. *Argenbright,* 1 Heisk., 128, 2 Am. Rep., 690; *Jourolmon* v. *Massengill,* 86 Tenn., 81, 5 S. W., 719; *Case Co.* v. *Joyce,* 89 Tenn., 337, 16 S. W., 147, 12 L. R. A., 519; *Wilkins* v. *Chicago, etc., R. Co.,* 110 Tenn., 442, 75 S. W., 1026.

"Decisions construing the Constitution or acts of the legislature should be followed, in the absence of cogent reasons to the contrary, inasmuch as it is of the utmost importance that our organic and statute law be of certain meaning and fixed interpretation. *Judges Cases,* 102 Tenn., 509, 53 S. W., 134; *Steedman* v. *Dobbins,* 93 Tenn., 397, 24 S. W., 1133; Cooley's Constitutional Limitations (7th Ed.), 88; 11 Cyc., 748.

"A construction of a statute or the Constitution, not emanating from judicial decisions, but adopted by the legislative or executive departments of the State, and long accepted by the various agencies of government and the people, will usually be accepted as correct by the courts. *Richardson* v. *Young,* 122 Tenn., 471, 125 S. W., 664; *Kelly* v. *State,* 123 Tenn., 516, 132 S. W., 193; *Brown* v. *Sullivan County,* 126 Tenn., 689, 151 S. W., 50; *Martin* v. *Hunter's Lessee,* 1 Wheat., 304, 4 L. Ed., 97; *Stuart* v. *Laird,* 1 Cranch, 299, 2 L. Ed., 115; *Cohens* v. *Virginia,* 6 Wheat., 264, 5 L. Ed., 257; *Bank of U. S.* v. *Halstead,* 10 Wheat., 51, 6 L. Ed., 264; *Minor* v. *Hoppersett,* 21 Wall., 162, 22 L. Ed., 627; Cooley's Const. Lim. (7th Ed.), 103, 104."

In that case the court quoted from the opinion in *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S., 429, 15 S. Ct., 673, 39 L. Ed., 759, as follows:

"Doubtless the doctrine of *stare decisis* is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue."

In view of the fact that oral opinions were delivered in the former causes, and that some questions are raised here which probably were not made before, we have con-

sidered this cause upon its merits, and have concluded that the former decisions of this court, sustaining the act, were correct.

As to the nature of the act, it is contended by the complainants that it is solely a revenue measure, while the State insists that it is both a police regulation and a rev. enue statute, and cite *Gundling* v. *Chicago,* 177 U. S., 183, 20 S. Ct., 633, 44 L. Ed., 725, in which it was said:

"It is not a valid objection to the ordinance that it partakes of both the character of a regulation and also that of an excise or privilege tax. The business is more easily subjected to the operation of the power to regulate, where a license is imposed for following the same, while the revenue obtained on account of the license is none the less legal because the ordinance which authorized it fulfills the two functions, one a regulating and the other a revenue function. So long as the State law authorizes both regulation and taxation, it is enough, and the enforcement of the ordinance violates no provision of the federal constitution."

We concur in this view. Whether the legislature intended, primarily, to regulate these corporations, or to acquire revenue, is immaterial. The question is, Does the act violate either the federal or the State constitutions?

It is said that the act violates the commerce clause of the federal constitution, but it is well settled that insurance is not commerce, and is not subject to interstate commerce regulations. *State* v. *Insurance Co.,* 92 Tenn., 420, 21 S. W., 893; *Paul* v. *Virginia,* 75 U. S. (8 Wall.), 168, 19 L. Ed., 357; *Ducat* v. *Chicago,* 77 U. S. (10 Wall.), 410, 19 L. Ed., 972; *Insurance Co.* v. *Morse,*

87 U. S. (20 Wall.), 456, 22 L. Ed., 369; *Manufacturing Co.* v. *Ferguson,* 113 U. S., 737, 5 S. Ct., 739, 28 L. Ed., 1140; *Mining, etc., Co.* v. *Pennsylvania,* 125 U. S., 181, 8 S. Ct., 737, 31 L. Ed., 650; *Hooper* v. *California,* 155 U. S., 648, 15 S. Ct., 207, 39 L. Ed., 297.

Neither does the act contravene the Fourteenth Amendment, which provides that no State shall "deny to any person within its jurisdiction the equal protection of the law."

The "equal protection of the law" provision only requires the same means and methods to be employed im- partially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S., 293, 18 S. Ct., 594, 42 L. Ed., 1037; *Kentucky Railroad Tax Cases,* 115 U. S., 321, 6 S. Ct., 57, 29 L. Ed., 414; *Barbier* v. *Connolly,* 113 U. S., 27, 5 S. Ct., 357, 28 L. Ed., 923.

Under this act the same burden is imposed upon domestic and foreign corporations.

We have been cited to no decision holding a similar statute violative of the Fourteenth Amendment, and from our investigation we find that the State had a wide range of discretion when it comes to distinguishing, collecting, and classifying objects of taxation. *Magoun* v. *Ill. Trust & Savings Bank,* supra; *Home Insurance Co.* v. *New York,* 134 U. S., 594, 10 S. Ct., 593, 33 L. Ed., 1025.

In the recent case of *Texas Co.* v. *Brown,* 258 U. S., 475, 42 S. Ct., 378, 66 L. Ed., 721, in passing upon a statute providing for the inspection of inflammable substances, and providing for the payment of certain fees, the court said:

"That, with respect to such substances when they have passed out of interstate commerce and have come to rest within the State and become a part of the general mass of property or have become the subject of domestic commerce, the State may impose inspection fees substantially in excess of the cost of inspection, and thus make them a source of general revenue, is also free from doubt, other than any which may arise from its own Constitution. But a State may not, without consent of Congress, impose this or any other kind of taxation directly upon interstate commerce; and inspection fees made to apply to such commerce, exceeding so clearly and obviously the cost of inspection as to amount in effect to a revenue tariff, are to the extent of the excess a burden upon the commerce amounting to a regulation of it, and hence invalid because inconsistent with the exclusive authority of Congress over that subject. *Standard Oil Co.* v. *Graves,* 249 U. S., 389, 394, 395, 39 S. Ct., 320, 63 L. Ed., 662.

". . . We have here a combined inspection and revenue law applicable to petroleum products, not materially differing in main features (aside from the revenue derived from the fees) from those adopted by other States . . . That it combines regulation with revenue raising is not a valid objection from the standpoint of the Fourteenth Amendment."

It is contended that the act violates the Fifth Amendment of the constitution of the United States, which provides that no person shall be deprived of life, liberty, or property, without due process of law, and that private property shall not be taken for public use without just compensation.

It has been repeatedly held that this amendment applies alone to the federal government and not to the States. *Frierson* v. *Church,* 7 Heisk., 703; *Barron* v. *Baltimore,* 7 Pet. (32 U. S.), 243, 8 L. Ed., 672; *Eilenbecker* v. *District Court, etc.,* 134 U. S., 31, 10 S. Ct., 424, 33 L. Ed., 801; *McElvaine* v. *Brush,* 142 U. S., 155, 12 S. Ct., 156, 35 L. Ed., 971.

Taking up the principal objection to the act as violative of the constitution of the State, it is said that article 2, section 28, only provides for two methods of taxation, viz. property and privilege, and that the act involved falls within neither.

In *Jenkins* v. *Ewin,* 8 Heisk. (55 Tenn.), 477, it was said:

"It is a principle of universal constitutional law, that the power to levy and collect taxes is an incident of sovereignty. The constitution of the State does not confer upon the legislature the power of taxation—it passes under the general designation of 'legislative power.' There is no limitation upon the legislature as to the amount or objects of taxation, except that found in the restrictions and prohibitions of the constitution.

"That section of the constitution, in which is found the clause under which the tax in question was imposed, first lays down the general prohibition, that all property, real, personal, and mixed, shall be taxed, but gives to the legislature a discretion as to taxing property held by the State, by counties, cities, or towns, etc., and then by way of restriction upon the exercise of the power proceeds as follows: 'All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be

equal and uniform throughout the State. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of the same value.'

"This is an absolute and imperative inhibition upon the legislature, requiring them, in taxing property, to provide that it be taxed according to value, but expressly excepting from the inhibition the manner of ascertaining that value. This much is left to the discretion of the legislature, but this discretion is to be so exercised that no one species of property from which a tax is collected, shall be taxed higher than any other species of property of the same value.

"So far the provision is confined expressly to the taxation of property. Then follows the controverted clause: 'But the legislature shall have power to tax merchants, peddlers, and privileges, in such manner as they may from time to time direct.'

"This language would seem, at first view, to confer upon the legislature the power to tax merchants, peddlers, and privileges. Its true object, however, was to indicate with distinctness that the power to tax merchants, peddlers, and privileges was not to be understood as inhibited by the restriction as to the taxation of property. Its meaning is that, although in taxing property the legislature is forbidden to tax it except according to its value, yet, as to merchants, peddlers, and privileges, the legislature is not to be restricted, but may exercise the taxing power without restrictions, either as to the amount, or as to the manner or mode of exercising the power. The word 'but' is significant of the purpose intended to be accomplished; it indicates that what fol-

lows is an exception to that which had gone before, and is not to be controlled by it.

"The words 'in such manner' used in this clause, have no other significance than to express with more distinctness and emphasis that the power of the legislature to tax merchants, peddlers, and privileges was unlimited and unrestricted, and might be exercised in any manner and mode in their discretion."

To the same effect were the decisions in *Waterhouse* v. *Public Schools,* 8 Heisk. (55 Tenn.), 859, *Henley* v. *State,* 98 Tenn., 681, 41 S. W., 352, 1104, 39 L. R. A., 126, and *Trentham* v. *Moore,* 111 Tenn., 353, 76 S. W., 904.

From the foregoing it will be observed that, with the exception of the limitations placed upon the authority to tax property, the legislature has the power to impose any tax it deems proper, regardless of what it may be denominated.

The fee provided in the act involved is clearly not a property tax, and this, as we recall, was conceded on the argument of the cause.

The elements of property in all corporations are the capital stock, the corporate property, the franchise of the corporation, and the individual stock of the shareholders. *Railroad* v. *State,* 8 Heisk. (55 Tenn.), 796.

The act under consideration does not attempt to tax either of these elements. It follows that the legislature, in its discretion, had the power to enact this statute for the purpose of creating revenue, and the act is valid.

The State has the power to grant or refuse permission to foreign corporations to do business within its borders, to say from time to time what they shall pay for such privilege, and it may expel them after they

153 Tenn.—44.

have been admitted. If such corporations deem the charges exacted exorbitant, their remedy is by appeal to the legislature, and, if redress is not afforded them, they can withdraw from the State.

The fees provided in the act of 1907 were intended as part of the charges for such privilege, and the issuance of a license is not necessary to evidence such intention. *Phillips* v. *Lewis,* 3 Shan. Cas., 243.

A privilege is whatever the legislature chooses to declare as such, and a positive prohibition, or the power to prohibit, is not essential to its validity. *Burke* v. *Memphis,* 94 Tenn., 694, 30 S. W., 742.

At the same session of the legislature that chapter 434 was enacted, but on a subsequent day, the General Revenue Bill was passed (chapter 541), which provided that foreign insurance companies should pay a privilege tax of two and one-half per cent. on gross premiums on business done within the State, "in lieu of all other privilege taxes."

It is insisted that the provision just quoted repealed, by implication, chapter 434.

From what we have said it appears that those falling within the class with complainants were called upon to pay two privilege taxes, which is a valid requirement where the legislative intent is clear.

The legislature did not intend, by the enactment of chapter 541, to repeal chapter 434.

The term, "in lieu of all other privilege taxes," has been repeatedly construed to mean the exclusion of the imposition of such privilege taxes by counties and cities. *Memphis* v. *Insurance Co.,* 6 Baxt., 527; *Memphis* v. *Insurance Co.,* 3 Shan. Cas., 463; *Insurance Co.* v. *Taxing*

*District,* 4 Lea, 646; *Memphis* v. *Carrington,* 91 Tenn., 511, 19 S. W., 673.

Hence that clause does not evince a legislative intent to repeal, by implication, chapter 434. That act was special, and not only created revenue but was regulatory in its character.

Special laws, as a general rule, are never deemed to be repealed, by implication, by general legislation, except upon the most unequivocal manifestations of an intent to that effect. *Goodbar* v. *Memphis,* 113 Tenn., 38, 81 S. W., 1061; *Railroad* v. *Railway,* 116 Tenn., 517, 95 S. W., 1019; *McCampbell* v. *State,* 116 Tenn., 109, 93 S. W., 100.

In *Zickler* v. *Bank,* 104 Tenn., 289, 57 S. W., 341, it was said that "repeals by implication of revenue and collection laws are not favored."

The legislature did not consider the act repealed because same was referred to and treated as in effect in subsequent enactments, to-wit: Chapter 13, section 2, Acts 1913, First Extra Session; chapter 21, Acts 1923; chapter 134, Acts 1925.

Section 6 of said act provides: "That all foreign insurance companies and all fidelity and surety corporations or companies, shall, as hereinafter designated, pay direct to the commissioner of insurance and banking, the following taxes, which shall be in lieu of all other taxes, except fees or taxes provided by chapter 434, of the Public Acts of the general assembly of the State of Tennessee of the year 1907 as amended by chapter 13, of the Public Acts of the general assembly of the State at its first extra session of the year 1913."

Section 2 of chapter 541, Acts of 1907, contains this clause:. "Nor shall this act be construed as repealing any special act heretofore passed imposing a privilege tax."

This clause is contained in chapter 479, Acts of 1909, chapter 101, Acts of 1915, chapter 134, Acts of 1919, chapter 75, Acts of 1923, and chapter 134, Acts of 1925.

It is apparent, therefore, that, if the legislature did not intend to repeal chapter 434 of the Acts of 1907 by chapter 541, passed at that session, it did not intend to repeal same by subsequent revenue acts.

In the original suits, referred to herein, it was insisted that chapter 434 was repealed by chapter 541. It was necessarily held otherwise in those cases.

There are many instances in which the payment of a double tax is required.

In the recent case of *Clark* v. *Killough* (Tenn.), 281 S. W., 777, a party who had paid a privilege tax as a merchant was required to pay a tax for dealing in coal, although he only sold it in small quantities as an incident to his business, and to accommodate his customers. In that cause, and others cited therein, will be found many instances in which the payment of a double privilege tax is sustained.

Another contention is that the act is arbitrary class legislation, and violates article 1, section 8, and article 11, section 8, of the constitution. This insistence is based upon the idea that the act only applies to corporations, and further that the act is discriminatory in that a $25,000 corporation is required to pay only $5, while a corporation with an authorized capital in excess of $1,000,000

is required to pay $150, the duties devolved upon each being the same.

The decisions are numerous sustaining tax enactments measured by this standard.

In *Jenkins* v. *Ewin,* supra, it was expressly held that the tax could be graduated according to the amount of capital.

These questions were fully considered by the court and decided adversely to the contention of the complainants in the recent cause of *Bank of Commerce & Trust Co.* v. *Senter,* 149 Tenn., 569, 260 S. W., 144. These questions were also raised and emphasized in the former suits referred to.

Our conclusions are:

(1) That the act violates no provision of the federal constitution.

(2) That it is not a property tax, and hence the legislature was not inhibited by the constitution from passing it.

(3) That it was a special privilege enactment.

(4) That the legislature did not intend to repeal it by chapter 541, Acts of 1907, or by subsequent enactments.

We have considered all of the questions raised by complainants, and find them without merit.

It results that the decree of the chancellor must be affirmed, with costs.

## ON PETITION TO REHEAR.

In the original opinion we undertook to deal, in a general way, with the material issues involved, and held

that chapter 434 of the Acts of 1907 was not repealed, by implication, by subsequent enactments.

We did not specifically refer to chapter 75 of the Acts of 1923, which contained this provision (referring to privilege taxes exacted of insurance companies), to-wit, "shall be in lieu of all other taxes."

In the enactment of general revenue statutes, passed at previous sessions of the legislature, the corresponding provision was, "Shall be in lieu of all other privilege taxes." The act of 1923 omitted the word "privilege." But it should be borne in mind that the legislature was dealing with privilege taxes, and was without power to exempt such companies from *ad valorem* taxes, and, if it be construed as exempting the companies from *ad valorem* taxes, then that provision of the act would be invalid. In order to save that clause in the act, we feel justified in interpolating the word "privilege," because such was the legislative intent. The word "privilege" is implied from the context and from the legislative history with respect to similar clauses, and its meaning is the same as that expressed in previous enactments, viz. an inhibition against the counties and municipalities levying a privilege tax.

Section 2 of chapter 75 of the Acts of 1923, contained a clause that this act shall not "be construed as repealing any special act heretofore passed, imposing a privilege tax."

Chapter 434 of the Acts of 1907 was a special act imposing a privilege tax.

That the legislature did not, by chapter 75 of the Acts of 1923, intend to repeal chapter 434 of the Acts of 1907, is further supported by the fact that, by chapter 21

of the Acts of 1923, the legislature provided that insurance companies paying an excise tax should have credit for the fees paid pursuant to chapter 434 of the Acts of 1907. And, as pointed out in the original opinion, section 6 of chapter 134 of the Acts of 1925 expressly excluded the fees paid under the act of 1907.

The many questions dealing with the implied repeal of chapter 434 of the Acts of 1907 were considered by the court, and the conclusion reached that the legislature never intended to repeal the act of 1907, and the legislative intent is controlling.

In our former opinion we held that, since chapter 434 of the Acts of 1907 was not a property tax, the legislature had the power to pass it solely as a revenue measure. Taking that view of the matter, we were unable then or now to see how its validity was affected by the amendatory act (chapter 13, First Extra Session of 1913), which provided that the fees, less the cost of collection, should be turned into the State treasury, and considered it unnecessary to specifically refer to the latter act.

The petition to rehear is without merit, and will be denied.