## STEEDMAN, STEERE & CO. *v.* DOBBINS & DAZEY.

### (*Nashville.* February 6, 1894.)

1. ASSIGNMENTS, GENERAL. *What is not.*

From the face of the conveyance alone it must be determined whether or not an instrument constitutes a general assignment within the meaning of Acts 1881, Ch. 121. Hence, an instrument which does not, upon its face, purport to be a general assignment, and does not comply, nor purport to comply, with said Act, but, on the contrary, creates preferences and omits schedules, cannot be converted into a general assignment by parol proof that it embraced all the maker's property, and then set aside as illegal and void for failure to comply with the Act. Such instrument does not fall within said Act, and is valid as a special assignment. (*Post, pp. 398–405.*)

Acts construed: Acts 1881, Ch. 121.

Cases cited and approved: Belding Bros. *v.* Frankland, 8 Lea, 67; Ordway *v.* Montgomery, 10 Lea, 515–520; Cowan, McClurg & Co. *v.* Gill, 11 Lea, 675; Hays *v.* Covington, 16 Lea, 262; Hill, Fontaine & Co. *v.* Alexander Bros., 16 Lea, 496; Rosenbaum *v.* Miller, 85 Tenn., 653; Lookout Bank *v.* Noe, 86 Tenn., 21; Scheibler *v.* Mundinger, 86 Tenn., 674; Kinsey & Franklin *v.* Wakely, MS. (1877); Orr, Jackson & Co. *v.* Buchanan, MS. (1889); Morrow *v.* Hughes, MS.; Lemon, Hale & Co. *v.* Johnson, MS. (1893).

2. STARE DECISIS. *Example.*

Acts of 1881, Ch. 121, relating to general assignments, having through a period of thirteen years been uniformly construed, by repeated decisions of this Court, to require that the instrument shall disclose its character upon its face, and that construction having been acquiesced in by the Legislature and acted upon by the legal profession and the business public, it will not be changed, in the absence of the most urgent reasons and convincing evidence that more good than evil would result from the change. (*Post, pp. 405, 406.*)

3. CONSTRUCTION. *Of Acts 1881, Ch. 121, strict.*

It is settled that Acts 1881, Ch. 121, must be strictly construed. (*Post, p. 407.*)

Cases cited and approved : Hill, Fontaine & Co. *v.* Alexander, 16 Lea,. 496; Lookout Bank *v.* Noe, 86 Tenn., 26; Scheibler *v.* Mundinger, 86 Tenn., 674.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County.. ANDREW ALLISON, Ch.

JOHN ALLISON for Complainants.

VERTREES & VERTREES and SMITH & DICKINSON for Defendants.

WILKES, J. This is a creditor's bill to set aside. an assignment made by Dobbins & Dazey to J. M. Dickinson, trustee, on the ground that it is fraudulent and invalid under the Act of 1881, Ch. 121.

Defendants demurred to the bill, and, their demurrer being overruled, they excepted and appealed to this Court, and assigned errors.

The case has been very elaborately and ably presented, and the question involved is of general interest and great importance.

Briefly stated, the question presented is, whether an assignment or deed of trust that does not comply with, or purport to comply with, the provisions of the Act mentioned can be shown by evidence *dehors* the conveyance to be a conveyance of all the debtor's property, and hence void and illegal.

because it does not comply with the requirements of that Act.

It is insisted that while this conveyance does not comply with the provisions of the Act, inasmuch as it gives preferences among creditors, and has no such schedules as that Act requires, and does not upon its face purport to be a general assignment under that Act, still that it does, as a matter of fact, convey all the debtor's property, and that this fact may be shown *dehors* the instrument by competent evidence, and that the result must be to render the assignment void, first, for want of compliance with the Act, and, second, because it is a fraudulent evasion of the Act. On the other hand, it is insisted that the conveyance is not a general assignment under that Act, and that the Court cannot look beyond the face of the instrument to determine this question.

The Act of 1881, Ch. 121, was approved April 6, 1881, and went into effect at that date. It came before this Court for the first time at the December term, 1881, in the case of *Belding Bros. & Co.* v. *J. Frankland, Trustee*, 8 Lea, 67, when the extraordinary character of the Act was referred to in the opinion of the Court, delivered by Judge Cooper, as follows:

"If property be not embraced in the assignment, it is obvious that it cannot pass to the assignee by virtue of the instrument. Certainly, as to real estate, the title to which must be conveyed by instrument in writing, containing a suffi-

cient description to identify it, and the conveyance
of which must be registered to be good against
creditors and *bona fide* purchasers for value, *there
will be some difficulty in carrying out the legislative
intent disclosed by the Act.* There will be less diffi-
culty as to personalty, where neither writing nor
registration is essential, for the statue may be
treated as in the nature of a bankrupt or insolv-
ent law. In that view the assignment would be
an act of bankruptcy, and the title to the prop-
erty would pass by operation of law. The argu-
ment submitted makes no objection to the efficiency
of the Act to this extent, but takes it for granted.
We shall act upon the concession in this case with-
out deciding the question."

It came up again in the case of *Ordway, Mc-
Guire & Co.* v. *Montgomery,* 10 Lea, 515, 520, at
the December term, 1882, and in that case the
Court, through Judge Cooper, said:

"The object of the statute, expressed in its title
as well as in the section quoted, was to prevent
a failing debtor from giving a preference to par-
ticular creditors by a conveyance of his property
for their benefit. It, therefore, invalidates a gen-
eral assignment giving preferences only to the ex-
tent of such preferences, and avoids altogether any
mortgage, deed in trust, or other conveyance of a
portion of a debtor's property for the benefit of
any particular creditor. But it does not in terms,
like the bankrupt law of the United States, ex-
tend to any payment, sale, or other disposition,

absolutely or conditionally, of the debtor's property."

In this case, there was a vigorous dissent by Judge Freeman, who took the broad position that the purpose of the Act was to prevent all preferences, and make an equal *pro rata* distribution of the debtor's property no matter what prefer ences he might make, nor what plans or means or forms of conveyance he might adopt. He stated very plainly that the effect of the opinion was, that a failing debtor might *appropriate all his property piece by piece or in gross* to any favored creditor or creditors, and leave the others nothing, thus practically rendering the statute nugatory, and that there would be no case where a preference might not be given to the extent of the entire property of the debtor, if an agreement could be reached as to price. He adds: "I cannot agree that this is the proper construction or meaning of. the statute, because it will, in practice, defeat its operation entirely, except . at the option of the debtor and favored creditor."

The line was thus sharply drawn between the two constructions as early as 1882.

The statute was next considered in *Cowan, McClung & Co.* v. *Gill,* 11 Lea, 675, upon a point not now material to be considered.

In *Hays* v. *Covington,* 16 Lea, 262, it was again considered, the opinion of the Court being again delivered by Judge Cooper. In this case, the conveyance did not purport. to be a general assign-

26—9 P

ment of all the debtor's property, and it was shown by proof that it did not embrace a tract of land upon which the debtor lived. There was no schedule of property attached to the conveyance. Soon after its execution, the creditors who were provided for by it, obtained judgments before a Justice of the Peace, and caused executions to issue and be levied on this tract of land upon which the debtor lived, and which was not embraced in the deed of trust, and were proceeding to condemn and sell the land, when they were enjoined by the trustee, on the ground that, though not referred to or described in the deed of trust, yet the tract of land, nevertheless, passed to the trustee by operation of the Act.

The Chancellor so held, and the Referees reported in favor of an affirmance of the Chancellor's decree, and the creditors excepted. It was held by this Court that, to constitute a general assignment under the Act, it must appear from the face of the conveyance, or the sworn inventory attached, that it was a general assignment of all the debtor's property, and if it did not, on its face, purport to be a general assignment, it would not be held to be a general assignment under that Act, but only a partial assignment, and, hence, could not have the scope and effect given by that Act, nor would it be governed by the rules laid down in that Act for such general assignments. This decision was rendered at the April term, 1886, at Jackson.

It was followed by the case of *Hill, Fontaine & Co.* v. *Alexander Bros.*, 16 Lea, 496, at the same term of the Court, opinion by Judge Turney, in which it was held that the requirement of a schedule by the Act was mandatory, and that the conveyance would be fraudulent and void in the absence of a sufficient schedule properly verified.

The next case was that of *Rosenbaum* v. *Miller*, 1 Pickle, 653, opinion by Judge Fowlkes, in which the question of inefficiency of description of the property conveyed was considered.

This was followed by the case of *Lookout Bank* v. *Noe*, 2 Pickle, 21, opinion by Judge Caldwell, in which it was again held that the provision of the statute in regard to a full and complete inventory or schedule, under oath, of all the debtor's property, was mandatory, and a strict compliance with the statute was absolutely essential to the validity of the assignment. The form and substance of the affidavit was considered, and the cases of *Hill, Fontaine & Co.* v. *Alexander Bros.* and *Rosenbaum* v. *Miller* were affirmed. It was held that an assignment must be treated as a general assignment when it appeared, from it language and the manner of its execution, that it was so intended, and when it was so treated by all parties, although it did not, in express terms, purport to convey all the debtor's property.

This was followed by the case of *Scheibler* v. *Mundinger*, 2 Pickle, 674–695, decided at the April term, 1888, opinion of the Court being delivered

by Special Judge M. M. Neil, in which it was said the statute did not intend to introduce any new legal instrument, but simply to regulate an old one heretofore in use; that the general assignment defined and recognized by the Act of 1881, Ch. 121, is an assignment of all a debtor's property for the benefit of creditors; that the character of the instrument must be ascertained from its face alone; that the requirement of a sworn schedule was mandatory; that great particularity of description was demanded, and an insufficient description in the schedule would not be remedied by the provision of the Act extending the deed to other property, nor by an offer in the schedule to furnish more full and particular description of the property if required, and laying down rules with illustrations as to description to be given of goods, choses in action, and other property.

This is, briefly, the law as it appears in our books, but we have several unreported cases bearing directly upon the points involved.

In the case of *Kinsey & Franklin* v. *Wakely*, decided December term, 1877, from Davidson County, it appeared that, as a matter of fact, all the debtor's property was conveyed, but the deed did not purport on its face to do so, and, the question being directly raised, it was held that, as the deed did not purport on its face to convey all the debtor's property, nor to secure all his debts, it was not a general assignment under the Act of 1881. The same was held in *Orr, Jackson & Co.*

v. *Buchanan,* December term, 1889, from Marshall County; and in the case of *Morrow* v. *Hughes,* from Maury County, at the same term; and, again, in the case of *Lemon, Hale & Co.* v. *A. Hill Johnson,* at Jackson, April term, 1893.

We have thus an unbroken chain of decisions for thirteen years, holding that the character of the instrument must be determined from its face, and that the Court will not look outside the four corners of the instrument to determine whether or not it is a general assignment under the Act of 1881.

This construction placed upon the Act, has been acquiesced in by the profession, and acted upon by the business men of the State, until it has, more or less, entered into all transfers and assignments, and the Legislature has not seen proper, during this time, to make any further or different legislation upon the subject.

The nice distinctions, many of them founded on reason and authority, made by learned counsel for complainants as to the differences between general assignments and mortgages and deeds of trust, were evidently not in the minds of the law-makers when they passed the Act, nor have they been applied by the Court in construing it. It might, perhaps, have been best to confine the Act to the technical case of a general assignment, as complainants' counsel contends, but it has not been so done. It is certain that since the Act, as before, deeds of trust, mortgages, pledges, and sales may

be made by the debtor preferring one creditor over another, and this may extend to a portion or all the debtor's property, and they will be held good even though this may seem to contravene the general purpose of the Act to make an equal *pro rata* distribution. But our Courts have held that, to bring an assignment under the Act of 1881, it must purport to be under that Act upon its face, either directly or by fair inference, and it cannot look beyond the instrument to determine whether it is or is not a general assignment of all the debtor's property. If this construction of the Courts defeated the purpose of the Legislature, they could have remedied it by proper legislation. They have not seen proper to do so during the thirteen years which have elapsed since this construction was placed upon it, and, the profession and business public having accepted and acted upon it, we cannot now disturb it.

Certainty and stability in the holdings of this Court are of such importance, that it is only for the most urgent reasons that a rule so often laid down, and so universally accepted and acted upon, would be changed, and then only in the event the Court could see that more good than evil would result from the change.

To hold for complainants in this case would result in giving to them a preference of satisfaction out of the property conveyed directly contrary to the letter and spirit of the Act.

It will not be contended that the law makes it

obligatory upon the debtor to make a general assignment under the Act of 1881. It is a matter left to the option of the debtor, and if he refuses to come in under the Act, it cannot be treated as a fraud upon the Act. When there is no obligation to do any act, a failure to do it creates no liability.

It is certain that the Act of 1881, as contained in the statutes and construed by the Courts, gives the debtor a right to make a conveyance which, in its scope and effect, reaches far beyond the scope and power of the common law assignment, vesting in the assignee property not specifically described or conveyed, and uprooting conveyances and transfers which, but for it, would have been valid and good—a scope and effect never possessed by any other conveyance, and it is proper therefore that it should be strictly construed and held in close and proper limits, and this has been the ruling of our Courts whenever the Act has come before it for construction. *Hill, Fontaine & Co.* v. *Alexander*, 16 Lea, 496; *Lookout Bank* v. *Noe*, 2 Pickle, 26; *Scheibler* v. *Mundinger*, 2 Pickle, 674.

The logical result of the Act, as construed by the Court, is to place in the hands of the debtor an option to use the Act or not, as he may see fit; and, in this sense, it may appear to be intended more for his benefit than for his creditors, but, even if this be so, the general purpose of the act is still preserved to make a *pro rata* dis-

tribution of all the debtor's property among all his creditors whenever the Act is followed.

While we are not disposed to go beyond what our Courts have already held in regard to this law, we are, at the same time, not disposed to disturb what has already been decided, even though better reasons may be given in either direction, and we, therefore, confine our ruling to the point that you cannot look beyond the instrument to ascertain whether it is or is not a general assignment of all the debtor's property, under the provisions of the Act of 1881. Tested by this rule, the assignment made an exhibit to the bill in this cause, does not purport to be a general assignment of all the debtor's property, and does not purport to be under the Act of 1881; and, this being so, the Court must look alone to the instrument, no matter what the bill may allege; and, this being so, the demurrer should have been sustained by the Court below, so far as the bill seeks to avoid the conveyance.

The decree of the Chancellor is reversed and the bill dismissed as to the trustee, and the cause is remanded to the Court below, where complainants may, if they choose, proceed to judgment against defendants, Dobbins & Dazey.

Complainants will pay the costs of appeal.