IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1895.

## BANK *v.* MARTIN.

(*Nashville.* January 7, 1896.)

GENERAL ASSIGNMENT.· *Fraudulent and void, when.*

An instrument purporting to be a general assignment is fraudulent in law and void, as stipulating for unreasonable delay, which postpones the sale of the realty embraced therein for two years, and then provides that it shall be sold for one-third cash and balance on one and two years' credit.

Act construed: Acts 1881, Ch. 121.

1—12 P

Bank *v.* Martin.

Cases cited and approved: Young *v.* Hail, 6 Lea, 175; Scheibler *v.* Mundinger, 86 Tenn., 674; Stedman *v.* Dobbins, 93 Tenn., 397; 80 Ill., 109; 69 Miss., 1.

Cases cited and distinguished: Bennett *v.* Bank, 5 Hum., 612; Roane *v.* Bank, 1 Head, 526.

FROM SUMNER.

Appeal from Chancery Court of Sumner County. J. W. BONNER, J., sitting by interchange.

WILSON & PARDUE and VERTREES & VERTREES for Complainants.

B. D. BELL, W. C. DISMUKES, ED. T. SEAY, J. J. TURNER, J. W. BLACKMORE, and GEORGE W. BODDIE for Defendants.

BEARD, J.   Jo. D. Martin, on November 18, 1893, made a general assignment for the benefit of his creditors.  ·Among these were the complainants in the above entitled causes.   They, however, repudiated the trust created by this instrument, and filed their respective bills, attacking it on several grounds as fraudulent in law.   On demurrer, the Chancellor entered a decree sustaining the assignment.   On appeal, the Court of Chancery Appeals reversed this decree, and remanded the causes to the Court below for further proceedings.   The cases are before us on assignment of error to this last decree.

Bank *v.* Martin.

By the deed in question there was conveyed to the assignee personal and real property, which he was directed to take possession of "at once." The personalty he was authorized to sell or dispose of "at any time to the best interest of all the creditors, and the real estate he was to rent out either publicly or privately." It was then provided "that if the debts of the assignor were not paid on or before the eighteenth of November, 1895, then, and in that event, the trustee shall proceed to sell said land, after legal advertisement, upon the usual terms of one-third cash and the balance in one and two years." It will be seen that the effect of this clause is, in the event of a sale of the realty, to postpone a final distribution of its proceeds for at least four years from the date of the deed.

The Court of Chancery Appeals held that this was a general assignment, distinguishable in important features from a mortgage, or a deed of trust in the nature of a mortgage, and that, whatever might be the effect of this extension of time in winding up the trust created by one of these latter instruments, it was a fatal vice in the former.

It is true that Mr. Burrill, in his very valuable work on Assignments, draws a distinct line of separation between an assignment, whether general or special, and a mortgage or a trust-deed in the nature of a mortgage. By the two latter instruments, while the legal title is conveyed to the mortgagee or trustee, it is only in the nature of a security;

the equitable title remains in the grantor, subject to his control and to be reached by his creditors. On the other hand, Mr. Burrill says: "An assignment is more than a security for the payment of debts; it is an absolute appropriation of property to their payment. It does not create a lien in favor of creditors on property which in equity is still regarded as the assignor's, but it passes both the legal and equitable title to the property beyond the control of the assignor." Burrill (6th Ed.), Sec. 6.

The distinction made by this author rests upon the authority of a number of reported cases emanating from Courts of the highest character, and it is adopted by Mr. Pingrey in his late work on Mortgages, Vol. I., Sec. 69. This Court, however, if it has not heretofore declined, at least has not undertaken to follow Mr. Burrill or the cases relied upon by him, in thus sharply distinguishing these instruments. Yet it has noted a common law assignment as possessing virtues peculiar to itself (*Young* v. *Haile*, 6 Lea, 175), and especially has it recognized a general assignment, executed under Chapter 121, Acts of 1881, as being, to a great extent, *sui generis*. *Scheibler* v. *Mundinger*, 86 Tenn., 674; *Stedman* v. *Dobbins*, 93 Tenn., 397.

But if this Court was disposed to adopt the definition of an assignment given by these text writers, the case at bar would not be a proper one in which to announce it. For, though the deed in question is none the less a general assignment, still,

by its terms, it does not make an unconditional appropriation of the grantor's property to the payment of his debts. On the contrary, it is only in the event that "the debts are not paid on or before the eighteenth of November, 1895," that the trustee can sell the realty. Thus, it is an instrument of a mixed nature. It is a general assignment partaking of the nature of a trust-deed, so far as the land was concerned; for, while it appropriates all the property as an ultimate fund for the payment of debts, yet, intermediately between its execution and the date fixed for sale, the realty simply stands as security against the grantor's default in the payment of these debts. It thus answers the description of the instruments referred to by Mr. Burrill in Section 8 of his work. Considering this, then, as such an instrument, is it vitiated by the extension of time given in the paragraph set out above?

It is true that, in regard to conveyances such as the one in hand, executed under Chapter 121, Acts of 1881, this Court has uniformly held that, by reason of their new and extensive effects, they must strictly conform to the requirements of the statute (*Stedman, Steere & Co.* v. *Dobbins, supra*), yet when such conformity is found, then these instruments, like a general assignment at common law, are entitled to a fair and reasonable construction, so that, if consistent with sound legal principles, they may be made to effectuate the purpose of their execution. Burrill, Sec. 285; Wait on Fr. Con., Sec.

343. In each case the Court seeks to ascertain the intent of the grantor, and, if it be found to be to hinder, delay, or defraud his creditors, the instrument will be declared void at the instance of the impeaching creditor. And where, upon the face of the instrument, it appears that the necessary effect of its provision is to hinder, delay, or defraud creditors, the law will impute to the grantor the fraudulent intent. *Marks* v. *Bradley*, 69 Miss., 1. For the law presumes every man to intend the legal consequences which must naturally flow from his voluntary acts, and every man is held responsible accordingly. Burrill, Sec. 302.

In view of these settled rules of construction, the question recurs, does the delay in the sale and distribution of the proceeds of this realty bring this assignment within the statute against fraudulent conveyances? While every assignment of a failing debtor has the effect to place his property beyond the reach of the ordinary process of the law, and thus puts some hindrances in the way of a speedy realization of his debt by the creditor, yet it is well settled that this does not necessarily make the instrument null and void. A reasonable time for the execution of the trust and the distribution of its proceeds is recognized as proper by all the authorities. If the period for doing this is fixed in the assignment, and the same is reasonable, such a stipulation will be valid. But "postponing to an unreasonable time the period of sale and payment will avoid the in-

strument.'' Burrill, Sec. 183. But what is a reasonable time is nowhere definitely settled. It depends on the character of the property or the circumstances of the case. Burrill, Sec. 183.

No fixed or inflexible rule has been announced by this Court, and, in the nature of things, possibly none could be. The nearest approach to such a rule is found in *Young* v. *Haile, supra,* where it was said, with regard to time given in a general assignment, ''that the probable law's delay is all that can fairly be stipulated for.'' This, of itself, is indefinite, yet it sufficiently approximates certainty to furnish an intelligent guide in each case as it presents itself.

Applying these general considerations to the case at bar, in the words of the Court of Chancery Appeals, ''it cannot be denied that the postponement of the sale and payment fixed in this deed is unusual; nor can it be denied that the delay is greater than would have ordinarily occurred in the collection by the creditors of their debts by due process of law. It would have been no more than his creditors were entitled to if Martin had allowed his property to be sold, and the proceeds distributed with as little delay as possible; but to postpone the payment of his debts three or four years, by tying up his property,'' is certainly unreasonable delay. And this delay is imposed on all his creditors. No one of them, however urgent his needs may be, or however he may doubt the in-

tegrity of the instrument, dare attack it, save at
the risk of a forfeiture of a right to share in its
proceeds in the event his attack should fail. Ap-
prehensive of the result of an attack, it may well
be that his creditors will submit to the long post-
ponement, however injurious to their interest, while
they see the property in the meantime depreciating,
or, else, discouraged by the inevitable delay, they
will accept ruinous compositions from their debtor
or his friends. There can be no benefit to them
in such an extension of time as is provided for in
this case, while great advantage may be suggested
as likely to accrue to the debtor, either from re-
luctant compromises extorted from the necessities or
impatience of creditors, or else from the possible
increase in the value of the property conveyed, re-
sulting in the satisfaction of his debts with a sur-
plus left to him.

We think the true rule is that "a debtor in
failing circumstances is only allowed to place his
property beyond the reach of his creditors by mak-
ing a general assignment of it, when he does so
for the benefit of the creditors by devoting it un-
reservedly to the payment of his debts, and not
with a view to his advantage, in delaying, until a
favorable time, the appropriation of the property
for such purposes." *Phelps* v. *Curts*, 80 Ill., 109.

Satisfied that this rule has been violated in this
instrument, we agree with the Court of Chancery
Appeals in its conclusion that it was fraudulent and

Bank *v.* Martin.

void as against complainants in the particular herein discussed. It is unnecessary to consider other assignments of error raised by the parties to the record.

It is proper to say that, upon an examination of *Bennett* v. *Union Bank*, 5 Hum., 612; *Roane* v. *Bank*, 1 Head, 526, and other cases of like character, cited by defendants in error, we do not regard them as being in conflict with the conclusion reached in this case.