S. C. Toof *v.* Austin Miller, Cashier.

Attachment.　*Conflict of laws.　Void preference.　Insolvent law of another state.　Laws of Tennessee*, 1895, *p.* 285.

　A sale made in Tennessee of personal property situated in this state, in consideration of the assumption and payment of certain debts of the vendor, accompanied by actual delivery of the property, is valid under the laws of this state, and the property is not subject to attachment by the creditors of the vendor, though the vendor is insolvent, and both he and the vendee reside in Tennessee, and the transfer operates as a preference, for, while the sale may be · void in Tennessee under the act of that state of May 11, 1895, in relation to such preferences. that act, considered with reference to the prior act of April 2, 1881, on the same subject, as interpreted by the courts of Tennessee, is seen to be an insolvent law, having no extraterritorial operation, under which the proceeds of the property would be distributed *pro rata* among all the creditors of the vendor.

From the circuit court of Bolivar county.
Hon. R. W. Williamson, Judge.
The opinion states the case.

*Moore & Clark*, for the appellant.

1. The statute of Tennessee is a penal statute, inflicting a penalty upon all parties who attempt to convey their property in satisfaction of their debts where the debts were contracted

subsequent to May 11, 1895—the loss of the entire property and the transferring of the property sought to be conveyed to a general fund for the benefit of all of the creditors of the vendor. Under no law of comity between the states would our courts be compelled to give effect to this statute. 18 Am. & Eng. Enc. L., 270, 274, and notes; *Hinds* v. *Brazealle*, 2 How. (Miss.), 837; *Mitchell* v. *Wells*, 37 Miss., 235; *Mohorner* v. *Hooe*, 9 Smed. & M., 247; *Wells* v. *Wells*, 35 Miss., 638; Story's Conflict of Laws, §§ 22, 23, 28, 29, 30.

The Tennessee statute contravenes the public policy of this . state, and will not be allowed an extraterritorial effect here. *Park* v. *Bamberger*, 52 Miss., 568; *Selleck* v. *Pollock*, 69 *Ib.*, 877; *Ivey* v. *Lalland*, 42 *Ib.*, 444; *Brown* v. *Nevitt*, 27 *Ib.*, 801.

2. The statute of Tennessee is an insolvent law pure and simple. It is intended to deal with that class of debtors who are insolvent, and, treated as an insolvent law, it has no extraterritorial effect, nor is it entitled to any recognition beyond the limits of that state. 3 Am. & Eng. Enc. L., 5, 13, note 4 p. 662; *Ogden* v. *Saunders*, 12 Wheat., 214; *Franzen* v. *Hutchinson*, 62 N. W. Rep., 698.

3. The burden of proof was on the plaintiffs in attachment to show that the property was subject to their writ. In this they totally failed, for, if the Tennessee statute is to govern, the property must be administered for the benefit of all of the vendor's creditors, share and share alike. *Ross* v. *Garey*, 7 How. (Miss.), 47; *Thornhill* v. *Gilmer*, 4 Smed. & M., 153; *Selser* v. *Ferriday*, 13 Smed. & M., 698.

*St. John Waddell*, on the same side.

1. The property mentioned in the bill of sale was all tangible personal property, situated in Mississippi; and it is by no means clear that the Tennessee statute is applicable. Where property of this nature has, like that in controversy, a known and fixed *situs*, contracts in reference to it are to be governed by the law

of the place where it is situated. Wharton's Conflict of Laws (2d ed.), § 311. So, also, if a contract is to be performed in a state other than the one in which it is made, it is to be governed and construed by the law of the state where it is to be performed. *Hart* v. *Foundry Co.*, 72 Miss., 809. The contract was not consummated until the delivery took place in this state.

2. This bill of sale was a contract made in one state to take effect in another, and, being void where made, but valid where it was to take effect, it should be upheld, as there is nothing in the instrument itself to evidence which law the parties contracted in reference to. *Brown Bros. & Co.* v. *Freeland & Murdock*, 34 Miss., 214. See *American, etc., Mortgage Co.* v. *Jefferson*, 69 Miss., 770.

3. The bill of sale is in full accord with the policy of the law of Mississippi, and valid under that law. *Selleck* v. *Pollock*, 69 Miss., 877; *Park* v. *Bamberger*, 52 *Ib.*, 565.

4. The Tennessee law itself does not apply to the bill of sale in question. Section 8 of the act provides that it shall not apply to any assignment, mortgage, confession of judgment or other conveyance made to pay or secure an indebtedness contracted prior to the passage of the act. A considerable part of the indebtedness that the vendee agreed to pay was contracted prior to May 11, 1895, the date of the passage of the act. If any part of the Ward indebtedness was contracted after the passage of the act, it would be a sufficient consideration to support the sale. Where a conveyance is made, as here, to secure separate items of indebtedness, a portion of which are valid and a portion of which are fraudulent and illegal, and there is no fraud in fact in the conveyance, the courts of Tennessee uphold the conveyance, so far as the legal consideration is concerned. *Neuffer* v. *Pardue,* 3 Sneed, 192; *Lassell v. Tucker*, 5 *Ib.*, 37; *Thurman* v. *Jenkins*, 2 Baxter, 431.

*Charles & A. Y. Scott*, for the appellees.

1. Although the property transferred by the bill of sale

from Ward to the appellant was in this state, the contract was
entered into in Tennessee, where both the vendor and vendee
resided, and must be classed as a Tennessee contract. Being a
Tennessee contract, and void under the laws of that state, it is
also void here. Acts of Tenn., 1895, p. 258; Story's Conflict
of Laws, §§ 362, 364, 377, 379, 380, 543; 3 Am. & Eng. Enc.
L., pp. 546, 547, 567, 568; *Woodson* v. *Owens*, 12 So. Rep.,
207; *Ivey* v. *Lalland*, 42 Miss., 447; *Partee* v. *Silliman*, 44
*Ib.*, 282; *Hart* v. *Foundry Co.*, 72 *Ib.*, 809.

2. There is no merit in the contention that, while nullifying
the sale, the Tennessee statutes would also require the prop-
erty, or its proceeds, to be divided among all of the vendor's
creditors *pro rata*, and that the plaintiff in attachment is with-
out right to subject the same under his writ. That is not a
true construction of the act, even if the suit was in the courts
of Tennessee. The bill of sale is declared void by the act, but
creditors of the vendor, proceeding in the courts of Tennessee,
as pointed out by the statute, might, under certain conditions,
have the property divided *pro rata*, provided, of course, no
creditor had, in the meantime, fastened a lien on it giving him
a superior right. Whatever the construction may be, if the
property and proceedings were in Tennessee, that part of this
act allowing a *pro rata* distribution under certain conditions,
cannot be successfully invoked in this litigation. In the mat-
ter of the remedy, the law of the forum always governs. Be-
sides, the Tennessee act has no extraterritorial force, and can-
not govern the rights or remedies of creditors proceeding to
collect their debts in the courts of Mississippi. We do not
seek so to use it. We simply say that the law is operative in
Tennessee, and this being a Tennessee contract, it is, therefore,
void under the law of that state. The contract being void,
there is no contract to be enforced either in Tennessee or any-
where else. That is one question. It is quite a different one
to give that act extraterritorial force by making it govern
rights and remedies in another state or county. The claimant

having nothing to sustain his assertion of right but a void contract, we are free to pursue the remedies afforded by the laws of this state, and reap the fruits of our diligence.

*Jones & Johnston*, on the same side.

1. The bill of sale from Ward to the appellant is void under the Tennessee statute. Acts of Tenn., 1895, p. 285. Both of the parties to the same being citizens and residents of that state, they must be treated as consenting to be bound by its laws. *Harrison* v. *Sterry*, 5 Cranch, 298; *Ogden* v. *Saunders*, 12 Wheaton, 214; *Baker* v. *Wheaton*, 5 Mass., 509; *Moore* v. *Bonnell*, 31 N. J. L., 90; *Burlock* v. *Taylor*, 16 Pick., 335; *Bentley* v. *Whittemore*, 19 N. J. Eq., 462; *Cole* v. *Cunningham*, 133 U. S., 107.

2. The act in question is not, as argued by appellant, an insolvent law, for it lacks the essential feature of the discharge of the bankrupt. But, conceding that it is an insolvent law, it is not true that insolvent laws have no extraterritorial force. A correct statement of the law is, that the insolvent laws of a state cannot affect the rights of citizens of another state, unless they have voluntarily submitted to them, as by filing their claims with the assignee, etc. If, for instance, the appellant had been a citizen and resident of Mississippi at the date of the bill of sale, instead of a citizen and resident of Tennessee, our courts would probably decline to enforce the Tennessee statute to his prejudice, but both the appellant and Ward, vendee and vendor in the bill of sale, being at the time citizens and residents of Tennessee, and the contract having been actually entered into in Tennessee, we submit there is no merit in appellant's contention. See authorities cited *supra*.

3. It is immaterial that a part of the indebtedness preferred by the bill of sale was contracted after the passage of the Tennessee statute (May 11, 1895); for, the transaction being illegal, under the act, as to so much of the same as had been previously contracted, it is void *in toto*. *Cotton* v. *McKenzie*, 57 Miss.,

418; *Kimbrough* v. *Lane*, 11 Bush, 556; *Brown* v. *Langford*, 3 Bibb, 497.

Argued orally by *St. John Waddell* and *Fred Clark*, for the appellant, and by *Charles Scott* and *Fontaine Jones*, for the appellee.

COOPER, C. J., delivered the opinion of the court.

The appellee brought suit by attachment against A. K. Ward, and the attachment was sustained, and a judgment on the merits rendered in his favor against the defendant therein. From that judgment no appeal is prosecuted. The appellant, claiming to be the owner of the property attached, interposed his claim thereto as provided by law, and, on the trial of the issue joined on his claim, the court gave the general charge for the plaintiff, and the claimant appeals.

We eliminate from the statement of facts any reference to matters as to which any controversy can be fairly said to exist. The peremptory instruction asked and secured by the plaintiff was grantable only if, assuming all that the testimony most favorably considered for the claimant proved, the law was with the plaintiff. We pretermit, therefore, any statement of the facts relative to the good faith of the parties to the contract of sale under which the appellant claims the property, or relative to its actual execution by the parties, the transfer of the property by Ward and its acceptance by Toof. As to these questions, to say the least of it, the evidence was abundantly sufficient to entitle the claimant to a trial by the jury.

A short time prior to June, 1895, Ward advised his father-in-law, Toof, that his business was seriously involved, and that he owed about $20,000, which must be paid. Toof promised to aid him, and Ward furnished what purported to be a schedule of his liabilities. From an investigation Toof learned that some of these liabilities were evidenced by paper emitted by Ward, upon which he had forged the names of Toof and oth-

ers as indorsers. Believing, from the statements of Ward, that the list contained all his liabilities, Toof was anxious to at once retire all the paper as to which forgery had been committed. Not having the necessary sum in hand to discharge these claims, Toof received from Ward his note for $10,000, which Toof himself indorsed, and secured some of his friends to also indorse it, and on this note obtained the money from another friend. The sum thus obtained was used by Toof in paying certain debts due by Ward, all of which had been contracted prior to May 11, 1895.

On October 15, 1895, Ward, without any previous understanding or agreement with Toof, executed a bill of sale of the property in controversy in this cause. The consideration recited is that Toof should assume and pay the note for $10,000 above referred to, and also certain other described notes and accounts owing by Ward to various persons, some of which debts had been contracted prior and some subsequent to May 11, 1895. The aggregate amount of all these liabilities was $21,700. The bill of sale contained the stipulation that "the said S. C. Toof, by the acceptance of this bill of sale or conveyance, hereby assumes absolutely to me the payment of all of the above mentioned indebtedness, when due, and those of said notes upon which he is now liable as indorser; that he will pay and discharge the same at maturity, and this bill of sale to be in full satisfaction to him for such payments."

The evidence for the claimant tends to prove that he accepted this conveyance of the property, and sent an agent from the State of Tennessee to Mississippi, where the property was located, who, in this state, received the custody of the property from the agent of Ward, who had been by him directed to deliver the same to Toof. It is contended by counsel for the appellee that Toof cannot maintain his claim to the property, for the reason that the contract of sale was entered into in the State of Tennessee between Toof and Ward, both of whom were citizens of that state, and by the laws of Tennessee sales made by

an insolvent to prefer one creditor are declared illegal and void.
This contention makes it necessary for us to construe and to de-
clare the force and effect of a statute of the State of Tennessee,
approved May 11, 1895. The title and act are as follows:

"AN ACT to secure a *pro rata* distribution of the property, estates and
assets of debtors, and to prevent debtors from making preferences
among creditors by assignments, deeds of trust, mortgages, deeds,
sale, pledge, or by any other form of transfer or conveyance, or by
confession of judgment, and to repeal chapter 121 of the acts of the
general assembly of the State of Tennessee of 1881, entitled 'An act
to secure to creditors an equal and just distribution of the estates and
assets of debtors who make general assignments for the benefit of
their creditors, and to prevent the giving of preferences in such
assignments, or by other conveyance. confession of judgment, by de-
fault or collusion in contemplation of insolvency.'

" SECTION 1. *Be it enacted by the General Assembly of the
State of Tennessee,* That no debtor shall make preferences be-
tween creditors by means of assignment, deed of trust, mort-
gage, deed, sale, pledge, or any other transfer or conveyance
of all, or substantially all, of his property, estate or assets, to
or for the benefit of the preferred creditor or creditors, and all
of such instruments, conveyances or transfers of all, or substan-
tially all, of a debtor's property, estate or assets, shall be illegal
and void, and all of the property, estate and assets therein
conveyed shall be distributed *pro rata* amongst all of such
debtor's creditors, whether they be mentioned or intended, and
payment of their debts provided for or not.

" SEC. 2. *Be it further enacted,* That whenever any assign-
ment, deed of trust, mortgage, deed, sale, or pledge, or any
other conveyance or transfer of a part or portion of a debtor's
property, estate or assets is made for the purpose of preferring
one or more creditors, or would have that effect, it shall be
illegal and void, and all of such property, estate or assets shall
be divided *pro rata* among all the creditors of said debtors.

" SEC. 3. *Be it further enacted,* That any confession of a
judgment by a debtor, or permitting judgment to be taken by

default, fixing a lien or incumbrance on any of his property, estate or assets, and made for the purpose of giving preference to one or more creditors, or that would so result, shall be considered, construed and held illegal and void, and such preferred creditor or creditors shall only be permitted to share ratably in a distribution of such debtor's assets.

"Sec. 4. *Be it further enacted,* That, whenever a question is raised in any legal proceeding as to the relative proportion of a. debtor's property conveyed, assigned or transferred, as above mentioned, or upon any other point arising out of this act, it shall be the duty of the courts to receive, hear and consider testimony bearing on such question, without reference to anything that may or may not be stated in, or appear upon the face of, such instrument. In all cases arising under this act, the burden of proof shall be on the debtor.

"Sec. 5. *Be it further enacted,* That any act on the part of the debtor to give preferences to one or more creditors in violation of the provisions of this act, shall be sufficient grounds to authorize any creditor of said debtor to file a bill in the chancery court and obtain the issuance of a writ of attachment and injunction and appointment of a receiver to take into possession and dispose of the property, estate and assets of said debtor attempted to be disposed of, for the benefit of all the creditors of such debtor, *pro rata.*

"Sec. 6. . . ."

Section 7 repeals chapter 121 of the acts of 1881. .

"Sec. 8. *Be it further enacted,* That the provisions of this act shall not apply to any assignment, mortgage, confession of judgment or other conveyance made to pay or secure an indebtedness contracted prior to the passage of this act."

The appellee contends that, by this statute, the contract of sale is declared to be illegal and void; that the contract is a Tennessee contract, and, being illegal by the laws of that state, will be so declared by the courts of this state by comity, and the property attempted to be transferred held liable to attach-

ment by the creditors of Ward. The appellant, on the other hand, contends that the statute is an insolvent law of the State of Tennessee, and, as such, can have no extraterritorial effect, wherefore the sale of the property is to be governed by the laws of this state, under which it would unquestionably be held a valid sale.

To determine the true nature and effect of the Tennessee statute, it is necessary to consider somewhat the prior statute which that of May 11, 1895, repealed, and the decisions of the courts of that state thereon.

The act of April 2, 1881, ch. 121, provided:

"Section 1. That preferences of creditors in general assignments of all a debtor's property for the benefit of creditors shall be illegal and void, and all general assignments shall operate for the benefit of all the debtor's creditors *pro rata*, whether all the creditors are named in the assignment or not. The insertion of a clause in the assignment giving a preference, shall not render the assignment itself invalid, but the clause only shall be nugatory, and all the debtor's creditors shall share ratably in property assigned.

"Sec. 2. That any mortgage, deed in trust or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors, made within three months preceding a general assignment, and in contemplation of making a general assignment, shall be void in the event a general assignment is made within three months thereafter, and the property conveyed by such conveyance shall be shared ratably by all creditors, just as that embraced in general assignments.

"Sec. 3. That any confession of judgment by a debtor, or permitting judgment to be taken by default, or by collusion, within three months preceding a general assignment, and in contemplation of such assignment, shall be void in the event a general assignment shall be made within three months after said judgment.

"Sec. 4. That the debtor making a general assignment shall

annex thereto a full and complete inventory or schedule, under oath, of all his property of every description, and that the trustee or assignee shall be entitled to any other property of the debtor not embraced in the assignment, and not exempt from execution, and also to property conveyed in violation of § 2 of this act, and to property or its proceeds signed [seized] to satisfy judgments rendered in violation of § 3 of this act.''

This act came before the supreme court of Tennessee for construction in a number of cases.   In the first case, *Belding Bros.* v. *Frankland,* 8 Lea, 67, Levison & Bro., a firm doing business at Nashville, had purchased, while insolvent, a bill of goods from Belding Bros.   While the goods were *en route* Levison & Bro. made what was declared to be a general assignment '' of all of our property of every description, the same being embraced in a schedule herewith annexed, and made a part of this conveyance.'' The goods bought from Belding Bros. were not on the schedule.   The court held (1) that the schedule controlled the language of the deed; (2) that the statute was in the nature of a bankrupt or insolvent law, and that the assignee acquired title, if any he had, by operation of law, and not through the deed.   The court also expressed a doubt whether, as to lands, so much of the fourth section of the act as provided that property not named in the conveyance should pass to the assignee could be given effect to, since, by other laws, lands were required to be conveyed in writing and the conveyance to be recorded, as against subsequent *bona fide* purchasers.

This decision was followed by that of *Ordway, McGuire & Co.* v. *Montgomery,* 10 Lea, 515, in which it was held that a sale by a debtor to a creditor in payment of a debt was not invalidated by the second section of the act, which declared the nullity of ''any mortgage, deed in trust, or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors.''

In *Hays* v. *Covington,* 16 Lea, 262, it was held (1) that the

legislature contemplated that the general assignment should be " of all the debtor's property," and that this fact should appear on the face of the deed, or the sworn inventory annexed, and, hence, that an assignment not showing this fact on its face was not within the act; (2) that the enactment must conform to the caption of the act to make the statute constitutional, and (3) a doubt was suggested of the power of the legislature to " make a contract between parties different from the one actually made, and say that a man has conveyed property when he has not conveyed and did not intend to convey it."

In *Hill* v. *Alexander*, 16 Lea, 496, it was held that a failure by the debtor to annex to his assignment " a full and complete inventory or schedule, under oath, of all his property of every description," as required by the fourth section, made the deed fraudulent on its face and prevented its operation under the statute as a general assignment.

Finally, in *Steedman* v. *Dobbins*, 93 Tenn., 397 (24 S. W. Rep., 1133), it was decided that a debtor might lawfully make an assignment of all his property, with preferences, nothwithstanding the act, if he elected not to come under its operation, the court saying : " It will not be contended that the law makes it obligatory upon the debtor to make a general assignment under the act of 1881.   It is a matter left to the option of the debtor, and, if he refuses to come in under the act, it cannot be treated as a fraud upon the act."

Looking at the act of 1895 in the light of the decisions on the act of 1881, it is evident that the legislative purpose was to cure the defects of the prior act.   The courts had held that, to bring an assignment within the operation of the act of 1881, it must be one of all the property of the debtor, and that a sale was in no event within the act.   By the first section of the act of 1895, preferences by conveyances of all, or substantially all, of his property by a debtor was prohibited, and preferences by any sort of conveyances, including sales, of all, substantially all, or a part of the estate of the debtor, were condemned by

the first and second sections. The courts had held that they would not look outside of the "four corners of the instrument" to determine its character (*Steedman* v. *Dobbins*), and by the fourth section of the act of 1895 it was provided that extraneous evidence should be received. The courts had expressed a doubt as to the validity of that provision of § 4 of the act of 1881 which declared that the assignee should be entitled to property not embraced in the assignment, if applied to land, and it was omitted from the act of 1895. The court had said that the act of 1881 was in the nature of an insolvent law, and a new section (8) was added, providing that the provisions of the act should not apply to any conveyance made to pay or secure an indebtedness contracted prior to the passage of the act, thus manifesting a clear intention to characterize the act as a state insolvent law.

The court had held that the provisions of the enactment must conform to its caption, and wherever in the act of 1895 nullity was declared as to a conveyance made by the debtor, it was followed by a provision that the "property, estate or assets shall be divided *pro rata* among all of the creditors of said debtors," thus conforming the body of the act to its caption. By the fifth section of the act the remedy for its enforcement was afforded to those for whose protection it was enacted, but, when invoked, it was to be for the equal and *pro rata* benefit of all, and no one creditor could by proceeding secure priority or preference over another.

We regret that in the construction of this statute we have not the advantage of any decisions on it by the State of Tennessee, but we are of opinion that in purpose and effect it is an insolvent law, and it should be so construed as not only to overturn conveyances and devices resorted to to escape its effect, but, also, to preserve the rights of all creditors to an equal participation in the proceeds of the estate of the insolvent, by ednying any one or more creditors the right to apply the property to his or their demands.

It is true the statute declares that any conveyance made to give preferences to one or more creditors, or which would have that effect, shall be illegal and void, and it is also true that, ordinarily, the effect of such words would be to nullify such conveyance—to obliterate its legal effect as though it had never been. But the statute does not stop here. It proceeds to declare what disposition shall be made of the property "therein conveyed"—which is that "it shall be distributed *pro rata* amongst all of such debtor's creditors, whether they be mentioned or intended, and payment of their debts provided for or not." Notwithstanding the declaration that the conveyances named "shall be illegal and void," some effect is yet given to them, either as conveyances operated upon by the statute or as facts operated upon by the statute, from and under which there is created a right in favor of all creditors to equally participate in the distribution of the estate attempted to be disposed of, which right is inconsistent with that of any single creditor to seize the property and subject it to his own claim. If the property here in controversy had been situated in the State of Tennessee, we think it would not have been subject to seizure under attachment at law or in any other proceeding by which the plaintiff sought to secure priority of right over other creditors. The words of the statute that the conveyances shall be illegal and void, are to be so construed as to effectuate the purpose of the act, not to defeat it. If the conveyance, as between all parties and for all purposes, should be treated as if it had never been made, the property embraced in it would be subject to seizure by any creditor who, thus acquiring priority over all others, would effectually prevent its being distributed *pro rata* among all the creditors of the debtor.

The act does not simply declare the conveyances to be illegal and void, but proceeds to provide what shall be done with the property therein conveyed, and what is provided shall be done with the property is entirely inconsistent with the exercise of those rights which, if the conveyance had never in fact been

made, the parties to it, or third persons, might have asserted.
The operation and meaning of these words must, upon familiar
rules of construction, be limited by the scope and purpose of
the act of which they are a part.    End. Interp. St., ch. 5.    In
*Philpotts* v. *Philpotts*, 10 C. B., 85, a statute declared that
conveyances of property knowingly made solely for the purpose
of giving a vote, should be "void and of none effect," but a
conveyance in violation of the statute was held to be valid be-
tween the parties, so as to pass the property—the court saying
it was void only so far as to confer a right upon the grantee to
vote, that being the purpose of the act.    The grant in that case
was of a rent charge, and the grantee was permitted to recover
in a suit upon the covenant.    Whether any right enforceable
only by action could arise from such a conveyance, it is unnec-
essary to consider.    The facts here show that there was an
actual delivery of the property sold.    The title to property so
dealt with passes to the vendee as against the seller, notwith-
standing the illegality of the contract.    9 Am. & Eng. Enc.
L., 923.

Under the laws of this state, where the property is situated,
the sale by Ward to Toof is free from objection.    If the prop-
erty had been in the State of Tennessee, the appellee, notwith-
standing the condemnation of the sale by the statute, would not
have been permitted to seize and appropriate it to his claim to
the exclusion of other creditors.    He might then have exhibited
his bill in chancery in behalf of himself and all other creditors
of Ward, for the purpose of securing a *pro rata* distribution of
the estate; but this would have been the extent of his right,
for the statute confers the right, and affords the remedy for its
enforcement, and any other proceeding than that pointed out
would operate to destroy the purpose of the act, and produce
the precise inequality it was intended to prevent.

Counsel for appellee concede that ordinarily the insolvent
laws of a state can have no extraterritorial force, but contend
that, since Toof and Ward were both citizens of the State of

Tennessee, owing allegiance to its laws, they carry with them, into whatever jurisdiction they may go, the disabilities and limitations imposed by the laws of that state; and, secondly, they contend that by the laws of the State of Tennessee the sale was condemned, and, since the courts of this state cannot enforce the remedy given by the Tennessee statute, we should accept simply the declaration of nullity of the contract, and then leave the property subject to be proceeded against by any person having a right to subject it under our rules of procedure.

The reply to these proposition is that, notwithstanding the illegality of the contract of sale (conceding, for the purpose of this suit, that the statute controlled the sale of property situated here), the title, as between Ward and Toof, passed to the latter by the delivery of the property in this state, and therefore that Toof may hold it as against all persons not having a superior right to him; that as a creditor under the laws of this state, the appellee would have no right superior to that of Toof, and as a creditor under the laws of Tennessee his rights are limited to a proceeding instituted and prosecuted for the benefit of all creditors of Ward. The substantive right of the appellee to challenge the validity of the sale rests upon and is limited by the remedy afforded by the statute.

The conclusion we have reached seems to be in accord with the views of the supreme court of Tennessee in the case of *Commercial Nat. Bank of Columbus* v. *Matherwell Iron Works*, 31 S. W. Rep., 1002.

*The judgment is reversed.*